STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS

RICHR NO. 05 ESH 200                                EEOC No. 16JA500124

In the matter of

Luisa S. Oliveira
     Complainant

v.                                                                    DECISION AND ORDER

Furniture Mattress Warehouse, Inc., Mukesh Tandon,
Carlos Montt, Jorge Montt, Erwin Vasquez and Rene Garcia
     Respondents

## INTRODUCTION

On April 6, 2005, Luisa Oliveira (hereafter referred to as the complainant) filed a charge with the Rhode Island Commission for Human Rights (hereafter referred to as the Commission) against Furniture Mattress Warehouse, Inc., Mukesh Tandon, Carlos Montt, Jorge Montt, Erwin Vasquez and Rene Garcia (hereafter collectively referred to as the respondents). The complainant alleged that the respondents discriminated against her with respect to terms and conditions of employment because of her sex, a violation of the Fair Employment Practices Act, Title 28, Chapter 5 of the General Laws of Rhode Island (hereafter referred to as the FEPA). The complainant specifically alleged a violation of Section 28-5-7 of the General Laws of Rhode Island. This charge was investigated. On January 12, 2007, Preliminary Investigating Commissioner Alberto Aponte Cardona assessed the information gathered by a staff investigator and ruled that there was probable cause to believe that the respondents violated the provisions of Section 28-5-7 of the General Laws of Rhode Island as alleged in the charge.

On April 3, 2007, a complaint and notice of hearing issued. The complaint alleged that the respondents discriminated against the complainant with respect to terms and conditions of employment because of her sex.

Hearings on the complaint were held on August 27, 2009, August 28, 2009, October 15, 2009, October 19, 2009, October 20, 2009, November 5, 2009, November 20, 2009 and May 11, 2010, before Commissioner Camille Vella-Wilkinson.[1] The complainant and respondents Furniture

---

[1] The transcript of the hearing on August 27, 2009 will be referred to as Trans. Vol. 1, the August 28, 2009 transcript as Trans. Vol. 2, the October 15, 2009 transcript as Trans. Vol. 3, the October 19, 2009 transcript as Trans. Vol. 4, the October 20, 2009 transcript as Trans. Vol. 5, the November 5, 2009 transcript as Trans. Vol. 6, the November 20, 2009 transcript as Trans. Vol. 7 and the May 11, 2010 transcript as Trans. Vol. 8. The Commission also held a hearing on a motion to quash a subpoena on December 17, 2009.



Mattress Warehouse, Inc., Mukesh Tandon, Carlos Montt and Jorge Montt were represented by counsel. Respondents Erwin Vasquez and Rene Garcia did not appear or participate in the proceedings. On June 23, 2010, Carlos Montt submitted a Post Trial Memorandum. On June 23, 2010, Furniture Mattress Warehouse, Inc. and Mukesh Tandon submitted Request for Findings of Fact and Rulings of Law and a Memorandum in Support. The other parties did not submit written memoranda after the hearing.

## JURISDICTION

Furniture Mattress Warehouse, Inc. is a corporation that employed four or more employees within the State of Rhode Island at the time in question and thus it is an employer within the definition of R.I.G.L. Section 28-5-6(7)(i) and is subject to the jurisdiction of the Commission.

Mukesh Tandon was a person acting in the interest of Furniture Mattress Warehouse, Inc., directly and indirectly, and thus was an employer within the definition of R.I.G.L. Section 28-5-6(7)(i) and is subject to the jurisdiction of the Commission.

Carlos Montt is alleged to have aided and abetted unlawful employment practices and thus is covered by the prohibitions of R.I.G.L. Section 28-5-7(6) and subject to the jurisdiction of the Commission.

Jorge Montt, Erwin Vasquez and Rene Garcia are alleged to have incited unlawful employment practices and attempted directly and indirectly to commit unlawful employment practices and thus are covered by the prohibitions of R.I.G.L. Section 28-5-7(6) and subject to the jurisdiction of the Commission.

## FINDINGS OF FACT

1. The complainant, a woman, began working for Furniture Mattress Warehouse, Inc. (hereafter referred to as the respondent employer) in September 2002. The respondent employer is in the business of selling retail furniture. The complainant was hired by Enrico (Rick) Grosso, with final approval by Nira Iacobbo. The complainant's position was Sales Representative. For most of her employment, she worked in the respondent employer's Warwick store. The complainant's sister, Fatima Lopes, also worked in the respondent employer's Warwick store. The complainant's brother had been a warehouse worker employed by the respondent employer. He was terminated by the respondent employer in or around July 2004.

2. The complainant's pay throughout her employment was $10 per hour plus commissions. As of the pay period ending August 7, 2004, the complainant had earned $14,832.20 in salary and $6,725 in commissions for 2004. Her average weekly salary was $549.34 from February 2004 to August 7, 2004. Her average weekly commission from February 1, 2004 to August 7, 2004 was $249.07.

2

3. Mukesh Tandon is the sole owner of the respondent employer. In 2004, respondent employer had stores in a number of locations, including Pawtucket and Warwick, Rhode Island, East Hartford, Connecticut and Attleboro and Randolph, Massachusetts. Nira Iacobbo is Mr. Tandon's sister and acted as the Chief Financial Officer and Human Resource Officer for the respondent employer. Ms. Iacobbo had been employed by the respondent employer since 2001. Ms. Iacobbo has a law degree and managed many of the respondent employer's personnel functions including scheduling, hiring and firing. In some instances, other managers interviewed applicants and made recommendations on hiring while Ms. Iacobbo had final approval on hiring. In 2004, Ms. Iacobbo generally handled day-to-day operations. Mr. Tandon generally set up stores, ordered furniture, priced furniture, dealt with advertising and occasionally checked on stores such as when there was a roof leak.

4. Mr. Grosso was the manager of the Warwick store in 2001. Carlos Montt was the manager of the Pawtucket store in 2001. Angel Iyala was manager of the Attleboro store in 2001. In September of 2002, Carlos Montt left the employment of respondent employer. Mr. Grosso was then assigned as the manager of the Pawtucket and Warwick stores. Carlos Montt returned to employment with the respondent employer at the Warwick store later in 2002. In January 2004, Carlos Montt was transferred to the East Hartford, Connecticut store. In April 2004, Carlos Montt was transferred to the Randolph, Massachusetts store, where he was the manager and the only employee. In 2004, Mr. Grosso was the manager of the Warwick store.

5. When the complainant's employment began with the respondent employer, she was not subjected to sexual touchings. While some sexual remarks were made to her by co-workers in her early employment, they did not appear to her to be serious and she did not take them seriously. The complainant was on maternity leave from October 2003 to February 2004. Before her maternity leave, the complainant had been working from 9 a.m. to 9 p.m. After maternity leave, she asked that she not be scheduled after 6 p.m. and the respondent employer granted her request.

6. After the complainant's maternity leave, her co-workers, Jorge Montt, Rene Garcia and Erwin Vasquez began making unwelcome sexual remarks to her and sexual remarks about female customers in her presence. Mr. Garcia was a warehouse worker at the Warwick store. Jorge Montt was a warehouse worker at the same store until he was promoted to salesperson in or around June 2004. Jorge Montt is the brother of Carlos Montt.

7. Jorge Montt made sexual remarks to or in front of the complainant almost every work day from February to June 2004. These included the following: when the complainant asked what her co-workers wanted for lunch, he would answer: "chorizo", meaning his penis; he would tell the complainant that she could not go get lunch unless she sat on his lap. The complainant believed that Jorge Montt had some supervisory authority over her.

8. Mr. Garcia made sexual remarks to or in front of the complainant almost every work day

3

from February to June 2004. These included comments about his "chorizo", meaning his penis.

9.      Mr. Vasquez made sexual remarks to or in front of the complainant almost every work day from February to June 2004. These included comments about his penis, asking the complainant to sit on his lap and putting things inside his pants in the genital area.

10.     Jorge Montt, Mr. Garcia and Mr. Vasquez also made remarks that the complainant's breasts and backside were bigger after her pregnancy.

11.     The complainant called Mr. Grosso, who was the manager of the Pawtucket and Warwick stores, and told him about "what was going on". Trans. Vol. 1, p. 41. The complainant did not know that he was the manager of the Warwick store but she believed that he was the manager of the Pawtucket store and was close to the owner and would take action. No action was taken on the complainant's complaints to Mr. Grosso.

12.     In or around June 2004, Jorge Montt's position was changed from warehouse worker to salesperson in the Warwick store. After that time, Jorge Montt, Mr. Garcia and Mr. Vasquez increased the number and inappropriate nature of their sexual remarks and began touching the complainant in a sexual way. Often, the complainant was the only woman at the store in the early morning. When the complainant went behind the counter to do paperwork, Jorge Montt, Mr. Garcia and Mr. Vasquez would go behind the counter, put her in the middle of the three of them and try to touch her breasts and backside. Jorge Montt, Mr. Garcia and Mr. Vasquez made comments such as – "If I give you $3,000, can you go in the back with me?" When the complainant was doing her paperwork, Jorge Montt would sneak behind her and put his hands inside her shirt on her breasts. He would kneel down and start rubbing the complainant's legs in front of customers. When customers were there, Jorge Montt would stand very close to the complainant as if he were checking her paperwork and he would rub her backside. Mr. Garcia and Mr. Vasquez would stand behind the counter and as the complainant walked behind the counter, they would walk forward so that they could touch her.

13.     In the summer of 2004, the complainant asked Jorge Montt if she could go for coffee and he replied that she would have to sit on his lap before he could let her go. The complainant walked away from him and did not go for coffee. In the summer of 2004, the complainant was writing a delivery for a customer and Jorge Montt came behind the complainant, stuck his hands in her pants and touched the skin on her back.. In the summer of 2004, the complainant was touched almost every day by Jorge Montt, Mr. Garcia or Mr. Vasquez.

14.     On July 26, 2004, Jorge Montt, Mr. Garcia and Mr. Vasquez talked about how big their "private parts" were, touched the complainant and rubbed themselves on her. Jorge Montt touched the complainant's breast and backside. As she walked by, he moved forward and moved his pelvis toward her. On July 27, 2004, Jorge Montt, Mr. Garcia and Mr. Vasquez discussed the size of their penises and asked the complainant if she wanted to see.

4

15. In the summer of 2004, Mr. Garcia would try to hug the complainant, kiss her shoulders and rub her backside almost every day.

16. In July or August 2004, Mr. Vasquez had a stick at work and used it to touch the breasts and backside of the complainant.

17. In August 2004, the complainant went to the back of the room to heat up her soup in the microwave. Jorge Montt followed her, threw a mattress on the floor and tried to push her on top of the mattress. The complainant screamed and he let her go.

18. Jorge Montt, Mr. Vasquez and Mr. Garcia made sexual remarks about customers. Mr. Vasquez took photographs of customers from behind.

19. The complainant saw Jorge Montt, Mr. Vasquez and Mr. Garcia inappropriately touch her sister, Fatima Lopes. At one point, Jorge Montt grabbed Ms. Lopes' underpants. She told him to stop and he did. In the summer of 2004, the complainant also saw Jorge Montt, Mr. Vasquez and Mr. Garcia touch another co-worker, Janette Rodriguez. On occasion, Ms. Lopes saw Jorge Montt, Mr. Vasquez and Mr. Garcia touch her sister, the complainant. Ms. Lopes would tell Mr. Garcia to stop it and Mr. Garcia would laugh at her. Ms. Lopes saw Mr. Garcia rubbing behind the complainant while the complainant was trying to write a receipt. Ms. Lopes heard Mr. Vasquez invite the complainant to go out with him and tell her that he would make her happy. The complainant refused. On another occasion, Mr. Garcia went towards the back of the store where the complainant was located, telling Ms. Lopes that he was going to grab her sister. Ms. Lopes saw Mr. Vasquez grab the complainant in the back of the store and throw her on the bed; Mr. Garcia and Jorge Montt also jumped on the bed. Ms. Lopes heard the complainant tell them to stop.

20. In the summer of 2004, Ms. Lopes complained about the touchings to Mr. Grosso, whom she believed to be the District Manager. Ms. Lopes called Mr. Grosso at least two times telling him that the complainant was crying to her about what the co-workers were doing to the complainant. Ms. Lopes told Mr. Grosso that he needed to talk to the co-workers to stop it.

21 In the summer of 2004, Ms. Lopes called Carlos Montt and said that the store needed a manager; that the co-workers were being like children. Carlos Montt told her not to worry, that he was going to do something. Carlos Montt indicated that he was going to take action against the harassing co-workers.

22. Ms. Lopes had been employed at the Warwick store of the respondent employer since 2002 and continued to be employed by the respondent employer as of the date of the August 29, 2009 hearing. When Ms. Lopes started her employment in November 2002, Carlos Montt acted as the manager of the Warwick store.

23. Janette Rodriguez worked for the respondent employer from approximately June 2004 to August or September 2004. The complainant is the aunt of the father of Ms. Rodriguez's

5

daughter. When Ms. Rodriguez started, she worked at the respondent employer's Warwick store. Jorge Montt would try to "get his little feels on" and if she "walk[ed] across something that's too tight, he [would] walk across it was well". Trans. Vol. 2, p. 50. He touched her at least four times. He touched her backside and her breasts. She witnessed him commenting on his sexual life in front of staff and making sexual comments approximately four or five times per day. She saw him cornering the complainant and pressing his body against hers. She wrote a letter about the harassment which she faxed to Carlos Montt at the Randolph store. He told her that he was going to take care of it. She was then transferred to the Randolph store in July 2004.

24.     In August 2004, the complainant spoke with Carlos Montt and reported the conduct of Jorge Montt, Mr. Garcia and Mr. Vasquez. He said he was going to do something about it, but nothing was done.

25.     The supervisory structure of the respondent employer was unclear to the complainant, Ms. Rodriguez and Ms. Lopes. In 2004, the complainant believed that Jorge Montt was the store manager or at least a managerial assistant to Carlos Montt and believed that Carlos Montt was a District Supervisor. Ms. Lopes testified that Carlos Montt continued to be the manager of the Warwick store because the employees would still call him with any problems when he was assigned to Massachusetts. Trans. Vol. 2, p. 5. She testified that he assisted her with problems. Trans. Vol. 2, p. 23. She believed that Mr. Grosso was a District Manager. Ms. Lopes testified that: "some people say he [Jorge Montt] was a manager, but I don't know". Trans. Vol. 2, p. 22. Ms. Rodriguez was interviewed for her job at the respondent employer by Carlos Montt and testified that he "actually got me the job". Trans. Vol. 2, p. 70. At one point, Ms. Rodriguez told Carlos Montt that he should do his part as a manager and he told her that he was not the manager of the Warwick store. Ms. Rodriguez testified that Carlos Montt "made it seem ... he was the manager of the Warwick store and the Randolph store and Jorge was his backup". Trans. Vol. 2, p. 70.

26.     At the time of the incidents in question, from February 2004 to September 2004, the respondent employer had no sexual harassment policy and no complaint procedure. The respondent employer had no employee handbook. Ms. Iacobbo testified that she would want all employees to report sexual harassment. She agreed that if Carlos Montt received a fax about sexual harassment, that it would be his job to tell her about it. Trans. Vol. 7, pp. 78-79.

27.     In September 2004, the complainant was transferred to the South Attleboro, Massachusetts store. Angel Iyala was the manager of that store. The complainant continued to work at the Warwick store on Sundays. Shortly after her transfer, in early September 2004, Mr. Iyala asked her why she looked so sad. The complainant talked to him about her treatment at the Warwick store. Mr. Iyala told the complainant that they would go to the Pawtucket store right away. The complainant went home to get her notes and met him at the Pawtucket store.

28.     At the Pawtucket store, the complainant and Mr. Iyala met with Mr. Tandon, Ms. Iacobbo

and Mr. Grosso. The complainant told them what had been happening in the Warwick store, crying while she was talking. The complainant cried hysterically during the meeting and she did not calm down until some time after the meeting. The complainant told them that she had been being sexually harassed by Mr. Garcia, Mr. Vasquez and Jorge Montt, that they had been touching her in the store. Ms. Iacobbo said that she would look into it, that the complainant should work in the Attleboro store only and not talk to Jorge Montt, Mr. Vasquez or Mr. Garcia.

29.  After the meeting, Ms. Iacobbo and Mr. Tandon asked other employees, including Ms. Lopes, about the complainant's allegations. Ms. Iacobbo testified that she could not corroborate the complainant's story. Trans. Vol. 6, p. 40. Ms. Lopes told them what was going on between Jorge Montt, Mr. Garcia, Mr. Vasquez and the complainant was "playing around".

30.  On or around September 7, 2004, the respondent employer gave written warnings to Jorge Montt, Mr. Garcia and Mr. Vasquez. The warnings stated that a complaint of sexual harassment had been made against them, that they were to have no contact with the complainant and that any failure to comply would result in their immediate termination. The warning further stated that the respondent employer was conducting an investigation to determine whether the allegations were reason for termination. The warning stated that they were to act with proper conduct and that sexual harassment would not be tolerated.

31.  On or around September 17, 2004, the complainant went to the Warwick Police station and talked to Detective Timothy Grant. She told Detective Grant of the incidents in the Warwick store and gave him her journal of notes on the incidents of sexual harassment. She also signed a statement for Detective Grant.

32.  Mr. Vasquez left the respondent's employment of his own volition some time after September 7, 2004. At some point after Mr. Vasquez left the respondent's employment, the Warwick Police contacted the respondent employer. Once the respondent employer learned that Mr. Garcia and Jorge Montt had been charged with a crime, it terminated their employment in or around January 2005. Mr. Garcia never returned to employment with the respondent employer.

33.  Jorge Montt sought unemployment benefits after his termination. The Department of Employment and Training records indicate that Ms. Iacobbo told the Department that Jorge Montt was suspended because another employee had filed a criminal sexual assault charge against him and that if Jorge Montt were found not guilty, he might be able to return to work. Complainant's Exhibit 16. While Jorge Montt was initially denied unemployment benefits, he was awarded unemployment benefits after he appealed and the initial decision was reversed by the Board of Review in September 2005. The Decision of the Board of Review states that Jorge Montt was denied benefits because charges had been filed and that "[o]nce the charges were resolved in his favor and dismissed the claimant filed his appeal from the benefit denial decision. The claimant was also rehired to his old job at the company". Respondent's Exhibit I, p. 1. The decision indicates that Jorge Montt and a

respondent representative had been present at the Board of Review hearing. The complainant was not given notice of the hearing and was not present. In 2005, the criminal charges against Jorge Montt were not resolved in his favor and were not dismissed. Jorge Montt received a deferred sentence in March 2007. The respondent employer re-hired Jorge Montt in or around 2005.

34.   On March 14, 2007, Jorge Montt received a deferred sentence for two counts of simple assault and was ordered to have no contact with the complainant. Jorge Montt had filed a plea of nolo contendere to the charges. In the March 14, 2007 hearing before Justice William E. Carnes on the plea, the following statements were made:

> THE COURT:  You understand that this plea means the same as a plea of guilty in the State of Rhode Island?
> THE DEFENDANT: Yes.
> THE COURT:  You understand that in order to enter into this plea today you must be prepared to admit that you did do the acts with which you are charged?
> THE DEFENDANT: Yes.
> ….
> MR. CORRIGAN [Special Assistant Attorney General]: Judge, with respect to Count 1 of this criminal information, had we proceeded to trial we would have been prepared to show that Jorge Monte [*sic*] on or about the 27[th] day of August, 2004, within the City of Warwick did commit a simple assault. With regard to Count 5 that Jorge Monte [*sic*] within the City of Warwick on a day or dates in June 2004 did commit a simple assault.
> THE COURT:  I assume they involved Louisa [*sic*] Oliveira and Jeannette [*sic*] Rodriguez; is that right?
> MR. CORRIGAN: That's correct.
> THE COURT:  All right.  Mr. Monte [*sic*], do you acknowledge perpetrating the activities as recited by the State of Rhode Island?
> THE DEFENDANT: Yes, your Honor.

Complainant's Exhibit 8, pp. 2, 5.

35.   On March 14, 2007, Mr. Vasquez received a deferred sentence for two counts of simple assault and was ordered to have no contact with the complainant. Mr. Vasquez had filed a plea of nolo contendere to the charges. In the March 14, 2007 hearing before Justice William E. Carnes on the plea, the following statements were made:

> THE COURT:  You understand that in the State of Rhode Island this plea is the same, for all practical purposes, to a plea of guilty?
> THE DEFENDANT: Yes.
> ….
> MR. CORRIGAN [Special Assistant Attorney General]: The facts that we have been prepared to show beyond a reasonable doubt at trial

relative to Count 1 are that in July of to [*sic*] 2004 in the City of Warwick the defendant did assault one Louise [*sic*] Oliveira in violation of Rhode Island law. Relative to Count 5 the defendant in the City of Warwick did commit an assault of one Jeannette [*sic*] Rodriguez in violation of Rhode Island General Laws.

THE COURT: Do you acknowledge doing those acts as recited by the State?

THE DEFENDANT: Yes.

Complainant's Exhibit 9, pp. 2, 5-6.

36    Since in or around 2002, the complainant had been treating with Hypertension & Nephrology, Inc., for hypertension. On September 28, 2004, she had an appointment with Raymond Cord, III, a physician assistant in that office. Mr. Cord was working with Dr. Richard Cottiero in the treatment of the complainant's hypertension. At the September 28, 2004 visit, Mr. Cord made a diagnosis that the complainant was having an acute reaction to stress. He based this diagnosis on his observations that she was tearful during the visit, had lost weight and was visibly depressed. He also based this diagnosis on her statements that she was having trouble sleeping, that she was having episodes of anger with her family, that she felt fatigued and that she, on occasion, would cry uncontrollably. Based on her account to him of sexual harassment at work, his opinion was that her acute reaction to stress was related to her work stresses. He wrote a note stating that she was unable to work from September 27, 2004 through October 10, 2004.   The complainant gave that note to the respondent employer and was out of work for that time period.   Hypertension & Nephrology, Inc. referred the complainant to Melissa Kelley of Sheehan Psychotherapy Associates for counseling.

37.   Mr. Cord saw the complainant for a visit on October 7, 2004. At that point, Mr. Cord diagnosed the complainant with Post-Traumatic Stress Disorder (PTSD). He prescribed medication for her. He wrote another note stating that she was unable to work from October 7 to November 1, 2004. The complainant gave that note to the respondent employer and continued to stay out of work. At the complainant's visit with Mr. Cord on October 21, 2004, the complainant was a bit better. Mr. Cord wrote a third note, stating that the complainant was unable to work from October 21, 2004 to December 1, 2004. The complainant gave that note to the respondent employer and was out of work for that period of time. At the November 23, 2004, visit of the complainant with Mr. Cord, he noted that she was better. He released her to resume working at some time between November 2004 and January 2005 because she had found work with another employer and her overall depression had lessened.

38.   On September 30, 2004, the complainant began treating with Mental Health Counselor Melissa Kelley. The complainant had not treated with Ms. Kelley before this time period. The complainant reported to Ms. Kelley that she had symptoms of increased anxiety, hypervigilance, difficultly sleeping, nausea, vomiting and weight loss. She reported her history of high blood pressure. The complainant told Ms. Kelley that she was being

harassed at work, citing specific incidents. It was Ms. Kelley's diagnosis that the complainant had PTSD. It was Ms. Kelley's opinion that the incidents at the complainant's work caused the PTSD. It was Ms. Kelley's opinion that the complainant could not work at that time. Ms. Kelley saw her for at least twelve sessions until April 2005. During treatment, the complainant reported on stresses other than the harassment, as well as her issues related to the harassment. Ms. Kelley referred the complainant to West Bay Psychiatric Associates for prescription of medicine. In April 2005, the complainant was reporting that she was sleeping better, that she had less anxiety, was eating better and had found or was close to finding another place of employment. Ms. Kelley last saw the complainant on April 26, 2005. At that point, it was Ms. Kelley's estimate that the complainant was at approximately 85% of her previous mental health.

39.     In 2004, Patricia Raposa was employed by West Bay Psychiatric Associates as an advanced practice registered nurse. Ms. Raposa first saw the complainant in November 2004. The complainant's diagnosis at that time was PTSD and major depression. Ms. Raposa reviewed with the complainant sexual harassment issues relayed to her by the complainant. Ms. Raposa prescribed medication for the complainant. The complainant's last visit with Ms. Raposa was June 22, 2005. On June 22, 2005, the complainant's condition had improved. The complainant had not treated with Ms. Raposa before November 2004.

40.     After December 1, 2004, the complainant chose to not return to work at the respondent employer. In or around December 2004, the complainant began working for another employer.

41.     The actions of Jorge Montt made the complainant "disgusted" (Trans. Vol. 1, pp. 51, 71) and she felt "horrible". (Trans. Vol. 1, p. 71.) She testified that the actions of Jorge Montt, Mr. Garcia and Mr. Vasquez affected her sexual life and left her afraid. She has had difficulty sleeping. She testified that Jorge Montt, Mr. Garcia and Mr. Vasquez told her that if she said anything that they would come after her family. Trans. Vol. 1, pp. 102-103. The complainant testified that she went to see a therapist in the fall of 2004 because she felt "violated" and had mood swings. Trans. Vol. 1, p. 133.

## CONCLUSIONS OF LAW

The complainant proved by a preponderance of the evidence that the respondent employer discriminated against the complainant with respect to terms and conditions of employment because of her sex.

The complainant proved by a preponderance of the evidence that Carlos Montt aided and abetted unlawful employment practices.

The complainant proved by a preponderance of the evidence that Jorge Montt, Erwin Vasquez and Rene Garcia incited unlawful employment practices and attempted directly and indirectly to

commit unlawful employment practices.

The complainant did not prove by a preponderance of the evidence that Mukesh Tandon discriminated against her because of her sex as alleged in the complaint.

## DISCUSSION
### THE COMPLAINANT PROVED THAT THE RESPONDENT EMPLOYER DISCRIMINATED AGAINST HER BECAUSE OF HER SEX WITH RESPECT TO TERMS AND CONDITIONS OF EMPLOYMENT

The Commission generally utilizes the decisions of the Rhode Island Supreme Court, the Commission's prior decisions and decisions of the federal courts interpreting federal civil rights laws in establishing its standards for evaluating evidence of discrimination. The Rhode Island Supreme Court has utilized federal cases interpreting federal civil rights law as a guideline for interpreting the FEPA. "In construing these provisions, we have previously stated that this Court will look for guidance to decisions of the federal courts construing Title VII of the Civil Rights Act of 1964. *See* Newport Shipyard, Inc., 484 A.2d at 897-98." Center for Behavioral Health, Rhode Island, Inc. v. Barros, 710 A.2d 680, 685 (R.I. 1998).

The Commission's Guidelines on Sexual Harassment, which track the Guidelines on Sexual Harassment of the U.S. Equal Employment Opportunity Commission (EEOC), 29 C.F.R. Chapter XIV, Part 1604, Section 1604.11, provide as follows:

> 3001. Sexual Harassment
>
> 3001(A) Harassment on the basis of sex is a violation of the Fair Employment Practices Act. Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Sexual harassment constitutes a form of sex discrimination prohibited by civil rights laws. *See, e.g.,* Faragher v. City of Boca Raton, 524 U.S. 775, 118 S. Ct. 2275, 141 L.Ed.2d 662 (1998); Harris v. Forklift Sys., Inc., 510 U.S. 17, 114 S. Ct. 367, 126 L.Ed.2d 295 (1993); Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 106 S. Ct. 2399, 91 L.Ed.2d 49 (1986); O'Rourke v. City of Providence, 235 F.3d 713 (1st Cir. 2001).

To prove a hostile environment sexual harassment claim, a complainant must show by a preponderance of the evidence:

(1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke, 235 F.3d at 728 (citing Faragher, 524 U.S. at 787-89; Harris, 510 U.S. at 20-23; Meritor, 477 U.S. at 65-73).

*The complainant is a member of a protected class.* It is beyond dispute that civil rights laws prohibiting sexual harassment apply to male and female victims.

*The complainant was subjected to unwelcome sexual harassment.* The complainant was subjected to unwanted physical and verbal sexual conduct. In assessing the "welcomeness" of sexual conduct, the Commission looks at whether the sexual conduct at issue was "uninvited and offensive or unwanted from the standpoint of the employee". Chamberlin v. 101 Realty, Inc., 915 F.2d 777, 784 (1st Cir. 1990). The record clearly establishes that the conduct to which the complainant was subjected was unsolicited and unwanted.

*The harassment of the complainant was "based on sex".* There can be no dispute that "discrimination 'because of … sex' includes 'requiring people to work in a discriminatorily hostile or abusive environment.'" Gorski v. New Hampshire Dept. of Corrections, 290 F.3d 466, 471 (1st Cir. 2002) (quoting Harris, 510 U.S. at 21). As evidenced in the Findings of Fact, the conduct in question was sexual in nature. There is no evidence, and respondent has not argued, that men in respondent employer's workplace were subjected to this conduct. The conclusion that the harassment of the complainant was "based on sex" is well supported by both the evidence and case law.

*The harassment to which the complainant was subjected was sufficiently pervasive and severe so as to alter the conditions of her employment and create an abusive work environment.* There is no "mathematically precise test" to aid in this determination. Harris, 510 U.S. at 22. Rather, in order to conclude that a hostile environment exists, the fact finder must look at "the record as a whole and the totality of the circumstances", Meritor, 477 U.S. at 69 (internal citations omitted), and assess such factors as the frequency and severity of the conduct, whether the conduct is physically threatening or humiliating and whether it unreasonably interferes with an individual's work performance. Faragher, 524 U.S. at 787-88; Harris, 510 U.S. at 23. Simple teasing or offhand comments are not sufficient to constitute sexual harassment. Faragher, 524 U.S. at 788. In the instant case, there is sufficient evidence to satisfy the fourth requirement of a successful hostile environment claim.

The evidence establishes that the complainant was subjected to repeated and frequent instances of

verbal and physical sexual conduct and that the conduct was serious, blatant, humiliating and offensive. The conduct was sufficiently severe and pervasive to create an abusive work environment. The Commission credits the complainant's testimony with respect to the acts of sexual harassment which she described. Her testimony appeared sincere, not glib or rehearsed. Ms. Lopes and Ms. Rodriguez credibly testified to witnessing some of the harassment to which the complainant was subjected. Trans. Vol. 2, pp. 7, 8, 29, 30, 58-60. Ms. Lopes' testimony was in front of the people who were employing her as of the date of the hearing. Ms. Lopes and Ms. Rodriguez also testified to being harassed by Jorge Montt in a manner which demonstrated a pattern of sexual discrimination. Trans. Vol. 2, pp. 28, 50, 51-55. The admissions of Mr. Vasquez and Jorge Montt in Superior Court – that they had assaulted the complainant and Ms. Rodriguez - were the capstones of the mass of evidence that the complainant was subjected to severe sexual harassment which created a hostile work environment.

*The sexually objectionable conduct to which the complainant was subjected was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the complainant did in fact so perceive the environment.* A reasonable person would find sexual comments and frequent sexual touchings to be objectionable in the ordinary workplace. It is clear that the complainant found the harassing conduct to be offensive.

*A basis for employer liability has been established.* Case law is unequivocal in holding that an employer is liable for employee harassment by co-workers when supervisory personnel knew or should have known of the harassment and failed to take prompt remedial action. *See, e.g.,* Faragher, 524 U.S. at 789 (favorably citing cases holding same and observing that "[i]n such instances, the combined knowledge and inaction may be seen as demonstrable negligence, or as the employer's adoption of the offending conduct and its results, quite as if they had been authorized affirmatively as the employer's policy") and Noviello v. City of Boston, 398 F.3d 76, 96-97 (1st Cir. 2005), which discussed the standard as follows: "The plaintiff's claim thus reduces to one of coworker harassment. The viability of that claim depends on whether there is sufficient evidence to permit a finding that the employer knew or should have known about the hostile work environment, yet failed to stop it." The issue of co-worker harassment was also addressed in Howley v. Town of Stratford, 217 F.3d 141, 154 (2nd Cir. 2000), which provides:

> When the source of the alleged harassment is a co-worker, the plaintiff must demonstrate that the employer "'failed to provide a reasonable avenue for complaint or if it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action.'" *Richardson v. New York State Department of Correctional Service,* 180 F.3d at 441 (quoting *Kracunas v. Iona College,* 119 F.3d 80, 89 (2d Cir.1997)); *see* 29 C.F.R § 1604.11(d) (1999) (employer is liable for co-worker harassment if "the employer (or its agents or supervisory employees) knows or should have known of the conduct, unless it can show that it took immediate and appropriate corrective action").

The Commission's Guidelines on Sexual Harassment are consistent with this standard. See

Section 3001(D):

> 3001(D) With respect to conduct between fellow employees, an employer is
> responsible for acts of sexual harassment in the workplace where the employer (or
> its agents or supervisory employees) knows or should have known of the conduct,
> unless it can show that it took immediate and appropriate corrective action.

The complainant complained to Mr. Grosso, the manager of her store, but the harassment
continued. Ms. Lopes also complained of the harassment to Mr. Grosso on at least two
occasions, but the harassment continued. Mr. Grosso did not testify; there was no evidence
contradicting the testimony of the complainant and Ms. Lopes that they reported the harassment
to Mr. Grosso. The complainant, Ms. Lopes and Ms. Rodriguez also complained to Carlos
Montt. Carlos Montt was the manager of the Randolph store.

Ms. Iacobbo claimed that she, and not the managers, was responsible for hiring, firing, discipline,
rate of pay and calling in sick, and that she communicated this to the employees. Trans. Vol. 7,
p. 17. The respondent employer had no sexual harassment policy and no employee handbook. It
is clear that employees were not informed as to managerial responsibilities. See Finding of Fact
Paragraph 25 above for the Commission's finding that the employees who had been harassed did
not know the supervisory structure of the respondent employer. The Commission credits the
testimony of the complainant, Ms. Lopes and Ms. Rodriguez as to their understanding of the
supervisory structure rather than Ms. Iacobbo's nonspecific answer that she had communicated
the managers' absence of personnel responsibilities to the employees. Ms. Lopes testified that
she went to Carlos Montt about problems and he assisted with them. Trans. Vol. 2, p. 23. While
he at one point said to Ms. Rodriguez that he was not the manager of the Warwick store, it
appeared that he influenced the decisions about the personnel at that store. For example, soon
after Ms. Rodriguez complained about harassment to him, she was transferred to the Randolph
store. He interviewed Ms. Rodriguez for her job and she testified that he "actually got me the job".
Trans. Vol. 2, p. 70. He told the complainant and Ms. Lopes that he would take care of the
harassment. Carlos Montt was a manager who appeared to have supervisory responsibility for
personnel matters at the Warwick store.

Given that complaints of harassment were made to Carlos Montt and to the actual manager of the
Warwick store, Mr. Grosso, and that employees were never told that they should complain
elsewhere, the complainant took sufficient steps to ensure that the respondent employer had
notice of the harassment. *See* Young v. Bayer Corp., 123 F.3d 672, 674 (7th Cir. 1997) (where
the employer does not clearly designate a point person to whom to report harassment complaints,
a complainant has ensured that the employer knows of co-worker harassment if she reports to a
person who "the complainant *reasonably believed* was authorized to receive and forward (or
respond to) a complaint of harassment" [Emphasis in original]; Sandoval v. American Bldg.
Maintenance Industries, Inc., 578 F.3d 787, 802 (8th Cir. 2009) ("[a]n employer has actual notice
of harassment when sufficient information either comes to the attention of someone who has the

power to terminate the harassment, or it comes to someone who can reasonably be expected to report or refer a complaint to someone who can put an end to it") and Rosario-Mendez v. Hewlett Packard Caribe BV, 573 F. Supp. 2d 558, 561 (D.P.R. 2008) (an employer may be held liable for co-worker harassment if information about the harassment is given to someone who is reasonably believed to have a duty to forward the information). *See also* Howley v. Town of Stratford, *supra* (an employer can be held liable for co-worker harassment if the plaintiff proves that the employer did not provide a reasonable avenue for complaint). The Commission notes that Ms. Iacobbo testified that she wanted all employees to report sexual harassment to her and agreed that if Carlos Montt had received a fax relating to sexual harassment, that it was his job to report it to her. Trans. Vol. 7, pp. 78-79. Given the respondent employer's absence of an employee handbook, a sexual harassment policy or training on complaint procedures, the harassed employees' confusion as to the supervisory structure, the report to the actual store manager as well as to Carlos Montt, and Ms. Iacobbo's agreement that it was Carlos Montt's job to report to her any complaints about sexual harassment, it is clear that the complainant notified the respondent employer of the harassment but the respondent employer did not take action to stop the harassment until September 2004.[2]    The complainant was subjected to severe sexual harassment for months after informing the respondent employer of the harassment.

The complainant proved that she was subjected to unlawful sexual harassment by the respondent employer.

The Commission notes that the complaint did not allege constructive termination and so that issue was not before the Commission.

## THE COMPLAINANT PROVED THAT THE RESPONDENTS JORGE MONTT, RENE GARCIA AND ERWIN VASQUEZ DISCRIMINATED AGAINST HER BECAUSE OF HER SEX WITH RESPECT TO SEXUAL HARASSMENT

As discussed above, Mr. Vasquez, Mr. Garcia and Jorge Montt committed egregious acts of sexual harassment against the complainant. The complainant is a member of a protected class, Mr. Vasquez, Mr. Garcia and Jorge Montt subjected her to unwelcome sexual harassment, the conduct was based upon her sex and the harassment to which the complainant was subjected was sufficiently pervasive and severe so as to alter the conditions of her employment and create an abusive work environment. Mr. Vasquez, Mr. Garcia and Jorge Montt are liable under R.I.G.L. Section 28-5-7(6), which provides that it is an unlawful employment practice:

> For any person, whether or not an employer, employment agency, labor organization, or employee, to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful employment practice, or to obstruct or prevent any person from complying with the provisions of this chapter or any

---

[2]    In September 2004, manager Angel Iyala took steps to ensure that the harassment would be addressed by the highest level of management of the respondent employer.

order issued pursuant to this chapter, <u>or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice;</u>

[Emphases added.]

Mr. Vasquez, Mr. Garcia and Jorge Montt incited unlawful employment practices. Black's Law Dictionary (8th ed. 2004) defines "incite" as: "To provoke or stir up (someone to commit a criminal act or the criminal act itself)." The actions of Mr. Vasquez, Mr. Garcia and Jorge Montt were designed to provoke unlawful harassment.

It is also clear that Mr. Vasquez, Mr. Garcia and Jorge Montt were attempting directly and indirectly to commit unlawful harassment. Therefore, they are liable under the FEPA. *See* <u>Iacampo v. Hasbro, Inc.</u>, 929 F. Supp. 562, 573 (D.R.I. 1996) (the "FEPA reaches past employers to forbid discrimination by individual employees"); <u>Wyss v. General Dynamics Corp.</u>, 24 F. Supp. 2d 202 (D.R.I. 1998) (individual defendants who were integral participants in harassment were liable under the FEPA); <u>Evans v. R.I. Department of Business Regulation</u>, 2004 WL 2075132 (R.I. Super. 2004) (an individual who participates in discrimination may be held individually liable under the FEPA). *See also* <u>Morehouse v. Berkshire Gas Co.</u>, 989 F. Supp. 54 (D.Mass.1997), which provides that under a Massachusetts statute with language very similar to R.I.G.L. Section 28-5-7(6), individuals who commit sexual harassment are individually liable, and <u>Ruffino v. State Street Bank and Trust Co.</u>, 908 F. Supp. 1019 (D. Mass. 1995) (individuals who discriminated are individually liable under Massachusetts law).

In summary, the complainant proved all the elements necessary to establish that Mr. Vasquez, Mr. Garcia and Jorge Montt violated the FEPA.

<u>THE COMPLAINANT PROVED THAT RESPONDENT CARLOS MONTT DISCRIMINATED AGAINST HER BECAUSE OF HER SEX WITH RESPECT TO SEXUAL HARASSMENT</u>

As discussed above, the complainant proved that she was subjected to sexual harassment for which the respondent employer, Mr. Vasquez, Mr. Garcia and Jorge Montt were liable. Carlos Montt did not verbally or physically harass the complainant but the Commission finds that he aided and abetted the harassment of the complainant by Mr. Vasquez, Mr. Garcia and Jorge Montt. Section 28-5-7(6) of the FEPA provides that:

It shall be an unlawful employment practice:

(6) For any person, whether or not an employer, employment agency, labor organization, or employee, to <u>aid, abet,</u> incite, compel, or coerce the doing of any act declared by this section to be an unlawful employment practice, or to obstruct or prevent any person from complying with the provisions of this chapter or any order issued pursuant to this chapter, or to attempt directly or indirectly to commit any act declared by this section to be an unlawful employment practice....

[Emphasis added.]

In Chapin v. University of Massachusetts at Lowell, 977 F. Supp. 72 (D.Mass. 1997), the Court, applying Massachusetts law which is very similar to the FEPA, held that a complaint against an individual supervisor for sex discrimination would not be dismissed where the plaintiff alleged that the supervisor was informed that the plaintiff was being harassed by co-workers but did nothing to investigate the harassment. The Court held that the supervisor could be held to have aided and abetted the unlawful harassment. The Court also cited similar interpretations of other state anti-discrimination laws as follows:

> In Dici v. Commonwealth of Pennsylvania, 91 F.3d 542 (3d Cir.1996), for example, the Third Circuit, interpreting Pennsylvania law, held that failure by a supervisor to take action to prevent known harassment gave rise to an aiding and abetting claim….. *see also* Bonner v. Guccione, No. Civ.A. 94–7735, 1997 WL 362311, at *15 (S.D.N.Y. July 1, 1997) (interpreting New York aiding and abetting statute and concluding that "Mr. Guccione can be held personally liable even absent a finding of active participation").

Chapin at 78-79. *Cf.* Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir.1988), in which the Court decided that the lower court mistakenly granted summary judgment in favor of individually-named supervisors in a 42 U.S.C. section 1983 case. The Court found that individual supervisors who allegedly took no action with respect to plaintiff's report of sexual harassment could be found "to have 'condoned,' 'acquiesced to,' and even 'encouraged' that unconstitutional behavior". *Id.* at 907.

Carlos Montt's actions violated the FEPA. The Commission credits the testimony of Ms. Rodriguez that she faxed a complaint to him and that he said that he would take care of it. Trans. Vol. 2, pp. 50, 53. The Commission credits the testimony of the complainant and Ms. Lopes that they complained to him about the harassment and that he said he would do something. Trans. Vol. 1, p. 95, Trans. Vol. 2, p. 14.[3] His assurances that he would take care of the complaints, his statement that he would forward the fax to headquarters, followed by his inaction, meant that knowledge of his brother's harassment would not get to headquarters and allowed his brother, Mr. Vasquez and Mr. Garcia to continue their harassment without consequence. Ms. Iacobbo testified that she wanted all employees to report sexual harassment to her and agreed that if Carlos Montt had received a fax relating to sexual harassment, it was his job to report it to her. Trans. Vol. 7, pp. 78-79. Therefore, one of Carlos Montt's duties was to forward harassment complaints to Ms. Iacobbo. He represented to the complainant that he would take steps to remedy the harassment and then withheld information about the harassment from headquarters. Carlos Montt's actions constituted aiding and abetting the unlawful harassment of the complainant by Mr. Vasquez, Mr.

---

[3] The Commission does not credit the testimony of Carlos Montt. He testified that there was only one instance when an employee attempted to tell him of an incident, that Ms. Rodriguez said that she would be faxing something to him, that he said that he would fax it to the main store, that the fax never came, and that when he asked Ms. Rodriguez about it, she said: "Never mind". Trans. Vol. 6 pp. 25-27.

Garcia and Jorge Montt.

## THE COMPLAINANT DID NOT PROVE BY A PREPONDERANCE OF THE EVIDENCE THAT RESPONDENT MUKESH TANDON VIOLATED THE FEPA

As discussed above, an individual respondent may violate the FEPA by, for example, inciting discrimination, aiding or abetting discrimination, attempting directly or indirectly to commit an unfair employment practice or obstructing compliance with the FEPA. The record was devoid of any evidence that Mr. Tandon had individual knowledge of the harassment before the meeting in September 2004. Once that meeting was held, the harassment of the complainant stopped. The complainant did not prove by a preponderance of the evidence that Mr. Tandon violated the FEPA by his actions or by lack of action.

## DAMAGES

R.I.G.L. Section 28-5-24 sets forth the remedies that the Commission can award after finding that respondents have committed an unlawful employment practice. R.I.G.L. Section 28-5-24(a)(1) provides as follows:

> **28-5-24 Injunctive and other remedies – Compliance. –** (a) If upon all the testimony taken the commission determines that the respondent has engaged in or is engaging in unlawful employment practices, the commission shall state its findings of fact and shall issue and cause to be served on the respondent an order requiring the respondent to cease and desist from the unlawful employment practices, and to take any further affirmative or other action that will effectuate the purposes of this chapter, including, but not limited to, hiring, reinstatement, or upgrading of employees with or without back pay, or admission or restoration to union membership, including a requirement for reports of the manner of compliance. Back pay shall include the economic value of all benefits and raises to which an employee would have been entitled had an unfair employment practice not been committed, plus interest on those amounts.
>
> …

The Commission finds that the complainant is entitled to reimbursement for her salary for the two months that she was unable to work due to her PTSD and stress reaction caused by the harassment, reimbursement for the medical expenses for the treatment of her PTSD and stress reaction and damages for pain and suffering.

The complainant was out of work due to PTSD and stress reaction caused by the harassment from September 28, 2004 to December 1, 2004, a period of nine weeks. Looking at the year to

date salary information on Complainant's Exhibit 1, which would cover the 27 weeks from
February 2004 when she returned from maternity leave to August 7, 2004, her average weekly
salary was $549.34 and her average weekly commission was $249.07.    Therefore, the
Commission awards the complainant $7185.69  (nine weeks x $798.41) to compensate her for her
time out of work until she obtained new employment.


The PTSD and stress reaction caused by the harassment required the complainant to obtain medical
treatment and counseling in order to recover.   The respondent employer, Erwin Vasquez, Rene
Garcia, Jorge Montt and Carlos Montt must compensate her for the amounts charged for these
treatments.   If the parties cannot agree on the amount of damages for the complainant's medical
treatment caused by the harassment, the Commission will hold a hearing to determine the amount.

The Commission has awarded compensatory damages for pain and suffering in previous cases.  The
Commission has indicated that it will be guided by federal cases interpreting federal civil rights
laws and the state case law on damages for pain and suffering.   R.I.G.L. Section 28-5-24(b)
provides that:

> (b) If the commission finds that the respondent has engaged in intentional
> discrimination in violation of this chapter, the commission in addition may award
> compensatory damages. The complainant shall not be required to prove that he or
> she has suffered physical harm or physical manifestation of injury in order to be
> awarded compensatory damages. As used in this section, the term "compensatory
> damages" does not include back pay or interest on back pay, and the term"
> intentional discrimination in violation of this chapter" means any unlawful
> employment practice except one that is solely based on a demonstration of
> disparate impact.

The EEOC has issued Enforcement Guidance on "Compensatory and Punitive Damages
Available Under Section 102 of the Civil Rights Act of 1991", 1992 WL 1364354 (EEOC
Guidance 1992) (hereafter referred to as the Enforcement Guidance).    The Enforcement
Guidance provides that it is EEOC's interpretation that compensatory damages are available for
pecuniary and non-pecuniary losses caused by discriminatory acts.  Non-pecuniary losses include
damages for pain and suffering, inconvenience and loss of enjoyment in life. "Emotional harm
may manifest itself, for example, as sleeplessness, anxiety, stress, depression, marital strain,
humiliation, emotional distress, loss of self esteem, excessive fatigue, or a nervous breakdown."
Enforcement Guidance, p. 5.  While "there are no definitive rules governing the amounts to be
awarded," the severity of the harm and the time that the harm has been suffered are factors to be
considered.  Enforcement Guidance, pp. 7, 8.

In Rhode Island, the determination of the appropriate amount of compensatory damages should
not be influenced by sympathy for the injured party nor should the damages be punitive.  Soares
v. Ann & Hope of R.I., Inc., 637 A.2d 339 (R.I. 1994). The decision makers should determine
the damages for pain and suffering by the exercise of judgment, the application of experience in

19

the affairs of life and the knowledge of social and economic matters. Kelaghan v. Roberts, 433 A.2d 226 (R.I. 1981).

Awards for damages for the pain and suffering which result from discrimination fall within a wide range. *See, e.g.*, Quiles-Quiles v. Henderson, 439 F.3d 1 (1st Cir. 2006) (reinstating a jury award of $950,000 {reduced to the statutory cap of $300,000} when there was evidence that the plaintiff was subjected to such constant ridicule about his mental impairment that it required him to be hospitalized and eventually to leave the workforce); Ledbetter v. Alltel Corporate Services, Inc., 437 F.3d 717 (8th Cir. 2006) (upheld award of $22,000 in compensatory damages to plaintiff who proved that delay in being classified as a manager was caused by racial discrimination; the plaintiff's own testimony about his humiliation, demoralization and diminished confidence was sufficient to prove damages for pain and suffering; medical or expert testimony was not required); Howard v. Burns Bros., 149 F.3d 835, 843 (8th Cir. 1998) (upheld the propriety of an award of $1,000 compensatory damages to a plaintiff who proved that a co-worker "brushed" her on several occasions and made sexual remarks; the plaintiff and her husband had testified as to her emotional distress); American Legion Post 12 v. Susa, 2005 WL 3276210 (R.I. Super. 2005) (compensatory damages of $25,000, $15,000 and $5,000 for pain and suffering awarded to complainants who proved that the respondent discriminated against them upheld, the complainants were distraught and reduced to tears on multiple occasions).

In the circumstances of the instant case, the Commission finds that $12,000 adequately compensates the complainant for her pain and suffering. The complainant was subjected to severe sexual harassment for a number of months. The Commission found, as set forth in the Finding of Fact 41 above, that the harassment caused the complainant to feel disgusted, horrible, afraid and violated. She had trouble sleeping. The harassment affected her sexual life. The harassment caused her to develop a stress reaction and PTSD, which necessitated medical treatment. Taking all of the evidence into account, the Commission finds that the harassment caused the complainant distress, and awards her $12,000 as the appropriate compensation for her pain and suffering.

The Commission awards interest consistently with the rate used for tort judgments. *See* R.I.G.L. Section 9-21-10(a):

> In any civil action in which a verdict is rendered or a decision made for pecuniary damages, there shall be added by the clerk of the court to the amount of damages interest at the rate of twelve percent (12%) per annum thereon from the date the cause of action accrued, which shall be included in the judgment entered therein…. [Emphasis added.]

The respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt are jointly and severally liable for the complainant's damages.

OTHER RELIEF

The Commission also orders other relief in order to forward the purposes of the FEPA. The respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt are ordered to undergo training on sexual harassment. The respondent employer's policy on harassment must comply with certain criteria, as outlined below, in order to be deemed effective. The respondent employer must also post the Commission anti-discrimination poster.

## ORDER

I.   Having reviewed the evidence presented on August 27, 2009, August 28, 2009, October 15, 2009, October 19, 2009, October 20, 2009, November 5, 2009, November 20, 2009 and May 11, 2010, the Commission, with the authority granted it under R.I.G.L. Section 28-5-25, finds that the complainant failed to prove the allegations of the complaint with respect to Mukesh Tandon and hereby dismisses the complaint as it refers to Mukesh Tandon.

II.   Violations of R.I.G.L. Section 28-5-7 having been found with respect to the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt, the Commission hereby orders:

1.   That the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt cease and desist from all unlawful employment practices under R.I.G.L. Section 28-5-7;

2.   That the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt are jointly and severally liable to pay the complainant $7,185.69 together with statutory annual interest of 12% from the date the cause of action accrued, February 2004, until paid, to compensate for her lost salary and commissions in the fall of 2004 while she was on sick leave;

3.   That the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt are jointly and severally liable to pay the complainant the amounts charged for medical treatment and counseling for PTSD and stress reaction, together with statutory annual interest of 12% from the date the cause of action accrued, February 2004, until paid; the amounts to be determined at a later Commission hearing if the parties cannot stipulate on the amounts on or before 45 days from the date of this Order;

4.   That the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt are jointly and severally liable to pay the complainant $12,000 as compensatory damages for pain and suffering together with statutory annual interest of 12% from the date the cause of action accrued, February 2004, until paid;

5.   That the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt submit proof of payment to the complainant in accordance with Paragraph II (2 and 4) within 75 days of the date of this Decision and Order;

6.   That the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt submit proof of payment to the complainant in accordance with Paragraph II (3) within 30 days of the date that the amount is determined or agreed upon;

7.   That, within 45 days of the date of this Order, the respondent employer develop a Sexual Harassment Policy/Complaint Procedure that provides employees an internal mechanism to have their complaints of discrimination addressed. The Policy, at a minimum, must meet the standards set forth in Title 28, Chapter 51 of the General Laws of Rhode Island and must identify at least two (2) individuals who can receive and address complaints;

8.   That the respondent employer prominently post a copy of the Commission poster and its Sexual Harassment Policy/Complaint Procedure prominently in its Rhode Island facilities and provide a certification to the Commission that the Policy/Complaint Procedure and poster have been posted together with a copy of the Policy/Complaint Procedure within 50 days of the date of this Decision and Order;

9.   That Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt receive training on state and federal anti-discrimination laws and provide a certification to the Commission within six months of the date of this Order that the training has been completed, the name of the trainer and a copy of the syllabus;

10.   That the respondent employer train all of its managers that work in Rhode Island on state and federal anti-discrimination laws and provide a certification to the Commission within six months of the date of this Order that the training has been completed, a list of the people who were trained, the name of the trainer and a copy of the syllabus.

III. The attorney for the complainant may file with the Commission a Motion and Memorandum for Award of Attorney's Fees no later than 45 days from the date of this Order. The respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos Montt may file a Memorandum In Opposition no later than 45 days after receipt of the complainant's Motion. The parties' attention is directed to Banyaniye v. Mi Sueno, Inc. and Jesus M. Titin, Commission File No. 07 PPD 310 (Decision on Motion for Attorney's Fees 2009) for factors to be generally considered in an award of attorney's fees under the FEPA. If any party elects a hearing on the issues involved in the determination of an appropriate award of attorney's fees, the party should request it in the memorandum.

Entered this 28th day of December, 2011.

Camille Vella-Wilkinson
Hearing Officer

I have read the record and concur in the judgment.

Rochelle Bates Lee
Commissioner

23

OPINION OF COMMISSIONER NANCY KOLMAN VENTRONE, JOINING IN PART AND
DISSENTING IN PART

I join the Commission's opinion except with respect to the finding that Carlos Montt violated the
FEPA and except with respect to the amount of the award of damages.

I credited Carlos Montt's testimony that he was not informed about sexual harassment except for
one instance where Ms. Rodriguez said that she would fax a complaint and later said that she
changed her mind.  There is no question that he did not harass the complainant himself.  I find
that there is insufficient evidence that he aided and abetted the unlawful harassment and so
dissent from the Commission opinion that he violated the FEPA.

I agree that the respondent employer, Rene Garcia, Erwin Vasquez, Jorge Montt and Carlos
Montt should pay the complainant for some of her medical expenses, but it is my judgment that
she should be awarded only half of the costs of treatment as there is evidence that she had pre-
existing issues and medical conditions that were likely a factor in her need for treatment.  I also
do not find that she proved that she experienced pain and suffering to the extent that she should
be awarded $12,000 in compensatory damages.  Therefore, I partially dissent with respect to the
award of damages.

*Nancy Kolman Ventrone*                          12/28/11

Nancy Kolman Ventrone                            Date
Commissioner

Before the
STATE OF RHODE ISLAND
COMMISSION FOR HUMAN RIGHTS

### JUDICIAL REVIEW NOTICE
Pursuant to §42-35-12 of the RI General Laws

Please take notice that you have the right to have judicial review of this final Order in a court of law pursuant to the Administrative Procedures Act, Section 42-35-15 of the Rhode Island General Laws. Proceedings for review are instituted by filing a complaint in the superior court of Providence County or in the superior court in the county in which the cause of action arose. The complaint must be filed with that court within thirty days after mailing notice of this final decision, or, if you have requested a rehearing, within thirty days after the decision on your request for a rehearing. Copies of the complaint must be served upon the Rhode Island Commission for Human Rights and all other parties of record in the manner prescribed by applicable procedural rules of court and within ten days after you file the complaint in court.

If you have any questions, please seek the advice of an attorney. If you do not have an attorney, you may contact the Lawyer Referral Service of the RI Bar Association. Staff of the RI Commission for Human Rights cannot give you any legal advice.

CERTIFICATION

I certify that I mailed a copy of the within Decision and Order in the case of Luisa S. Oliveira v. Furniture Mattress Warehouse, Inc., Mukesh Tandon, Carlos Montt, Jorge Montt, Erwin Vasquez and Rene Garcia, Commission File No. 05 ESH 200, along with a Judicial Review Notice to the following persons by regular mail, postage prepaid, on December 28, 2011:

Joseph Keough, Jr., Esq.
Keough & Sweeney
41 Mendon Ave.
Pawtucket, RI 02861

Monica Horan, Esq.
393 Armistice Blvd.
Pawtucket, RI  02861

J. Patrick O'Neill, Esq.
Jackson O'Neill, LLC
26 Valley Rd Ste 203
Middletown, RI 02842

Joseph-Anthony DiMaio, Esq.
McKinnon & Harwood
1168 Newport Avenue
Pawtucket, RI  02861

Mr. Rene Garcia
105 Hanover Street
Providence, RI  02907

Mr. Jorge Montt
73 Waverly St.
Providence, R.I.  02907

Mr. Jorge Montt
c/o J. Patrick O'Neill, Esq.
Jackson O'Neill, LLC
26 Valley Rd Ste 203
Middletown, RI 02842

Mr. Carlos Montt
c/o Monica Horan, Esq.
393 Armistice Blvd.
Pawtucket, RI  02861